UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL C. WORSHAM | * | |
| *Plaintiff* | * | |
| vs. | * | Case 1:20-cv-00193-SAG |
| DIRECT ENERGY SERVICES, LLC | * | |
| *Defendant* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S PARTIAL CONSENT MOTION FOR CONTEMPT OF COURT AGAINST ARMSTRONG TELECOMMUNICATIONS, INC. FOR FAILING TO COMPLY WITH COURT ORDER

Plaintiff Michael C. Worsham moves for a Court Order of contempt against non-party Armstrong Telecommunications, Inc. ("Armstrong") for failing to comply with the Courts July 8, 2020 Order (ECF 40) granting Worsham's April 22, 2020 Motion to Compel Armstrong (ECF 26) to respond to his Subpoena for telephone records related to his home telephone number that Worsham received seven of the telemarketing calls at issue in this suit.

Worsham does not seeks costs or fees, but seeks an appropriate Order of contempt to force Armstrong to provide the important carrier information that Worsham has been seeking in his Subpoena for several months.

### BACKGROUND

1. The Amended Complaint (ECF 13-1) alleges in ¶ 5 (see concise list on p. 8) receiving 27 calls from Defendant for which the Caller ID information was spoofed (faked).

2. Of the 27 calls, Worsham alleges 7 were made to his home residential number 410-692-2749 from October 2018 to January 2019. *Id.* at p. 8.

3. On February 3, 2020 the Clerk issued a Subpoena to Armstrong, which was previously filed on April 22, 2020 as document ECF 26-2.

4. On February 6, 2020 Worsham served the Subpoena on Armstrong, by both U.S.

mail and emailing it to the email address Armstrong identifies as the one for serving Subpoenas, Subpoena@agoc.com. *See* February 6, 2020 Worsham letter to Armstrong, previously filed on April 22, 2020 as ECF document 26-3.

5. After Armstrong did not respond to the Subpoena or contact Worsham, despite Worsham following up via email on March 30, 2020 and April 10, 2020 (copies of these emails to Armstrong were previously filed as ECF document 26-4), on April 19, 2020 Worsham emailed Armstrong a copy of Worsham's Motion to Compel.

6. On April 22, 2020 Worsham filed his Motion to Compel (ECF 26).

7. On July 8, 2020 the Court granted the Motion to Compel in an Order (ECF 40).

8. On July 9, 2020 Worsham emailed the Court's Order to compel to Armstrong. Exhibit 1 attached herein is a copy of that email.

9. On July 16, 2020 Armstrong mailed Worsham a letter dated July 14, 2020, attached as Exhibit 2, with a revised call list, attached herein as Exhibit 3. On July 18, 2020 Worsham forwarded these documents to defense counsel.

10. On July 19, 2020 Worsham emailed Armstrong and explained that their revised list did not include the carrier information sought in the Subpoena, and that the code for the Caller ID for one of the calls is Armstrong itself. A copy of this July 19, 2020 email is attached as Exhibit 4 herein.

11. On July 24, 2020 Worsham emailed Armstrong again, asking again for the carrier information. A copy of this email is included within Exhibit 4. Worsham also called Armstrong, but was only able to leave a message on Armstrong's voice mail.

12. Armstrong has never emailed or called Worsham, and during the last few months when ever Worsham has called Armstrong's 866-887-8495 dedicated Subpoena compliance

number, he has only been able to leave voice messages, which are not returned.

## ARGUMENT

13. The Subpoena to Armstrong concerns Worsham's home number 410-692-2749 which he has subscribed to through Armstrong for over 6 years, and requests records identifying all carriers for calls to 410-692-2749 on the dates that Worsham alleges he received calls from the Defendant in ¶ 5 of the Amended Complaint (ECF 13-1), and which are listed on page 8 of the Amended Complaint as Calls #21-27.

14. The Armstrong Subpoena also requests the same carrier information for several calls Worsham received in November 2019 to his home number which he believes Defendant may also be responsible for (but not yet formally alleged), because the calls were similar solicitations for discount energy services, also with spoofed Caller ID.

### Armstrong's July 2020 revised list

15. As Worsham explained in his emails to Armstrong, the revised list does not comply with the Subpoena and Court Order.

16. Armstrong created a new, third column of data titled "Owner at Time of Call," which appears by its title to identify the telephone company that owns each number in the "Calling Party" in column 2, which is the number appearing on Caller ID for each Call.

17. The Subpoena requests the identification of the carrier for each call connecting to Worsham's Armstrong number 410-692-2749 (the Called Party number in column 4).

18. The Caller ID numbers (Column 2) transmitted were spoofed and do not represent the actual caller. Identifying the owner of spoofed numbers is not useful information. The point of the Subpoena is to identify the carrier of each call, meaning the phone company that actually transmitted the last portion of the call to Armstrong, in order to

work backwards to identify the originating caller, a process called a traceback.

19. The fifth call on Armstrong's revised list, made on December 6, 2018, transmitted 410-692-4689 as the Caller ID (Column 2), and Armstrong identified the owner of 410-692-4689 at the time of the call as Armstrong via the code "ATI MD - 420 C" in Column 3, which can be verified by checking this Local Calling Guide search page: https://localcallingguide.com/lca_prefix.php?npa=&nxx=&x=&ocn=420c&region=&lata=&lir=&switch=&pastdays=&nextdays=    In other words the ATI in "ATI MD-420 C" means Armstrong Telecommunications, Inc.

20. This means Armstrong's July 14, 2020 cover letter assertion that it "does not have any additional information on the matter including the contact information of the companies listed on the document" is incorrect at least for call 5 on its revised list.

21. Armstrong's list also incorrectly labeled Column 2 as "Calling Party," because the Column 2 are the numbers transmitted on Caller ID, not the number of the "Calling Party." The fact that these transmitted Caller ID numbers were spoofed can be detected by observing that several are 410-692-xxxx, a clear indication of "neighbor spoofing," where the spoofed number transmitted on Caller ID matches the area code (410) and local exchange (692) of the called number (Worsham's 410-692-2749 home number).

22. Worsham pointed out in his Motion to Compel that following up with serving a Subpoena to the carrier of the faked (or spoofed) Caller ID numbers would not yield any useful information, only the identity of someone who happens to subscribe to a faked number and who has nothing to do with the suit. The Subpoena would also burden those carriers who would have to respond and also have to alert their account holders for those spoofed numbers, who are essentially innocent bystanders to the

spoofed (faked) Caller ID numbers and/or names.

23. A Subpoena to the carrier of the faked Caller ID number will also not yield anything useful for numbers that are non-working, as Worsham learned when he called the number 667-367-0142 that had appeared on his Caller ID for the three calls he received on November 19, 2018. *See* Amended Complaint at page 4, bottom, for Call #14 on Nov. 19, 2018; *see also* Call #4 on Nov. 5, 2018, described on the top of page 3.

24. Again, Worsham seeks records or documents identifying the phone carrier or company which carried or transmitted the last portion of each of these seven calls to his home and cell numbers, **NOT** the company that owned the spoofed or faked number that was transmitted on Caller ID (Column 2).

25. If Armstrong ever provides the requested carrier information, Worsham intends to then issue a Subpoena to those carriers, to identify the actual originating caller, rather than the innocent holder of a faked/spoofed Caller ID number that just happened to be transmitted as the Caller ID.

26. Worsham's phone provider Armstrong has or should have the identity of the carrier which transmitted each call to its network as part of the overall completed transmission of each call to Worsham.

27. The process of investigating a call through multiple carriers is called a traceback. Further background on this traceback process is discussed in a supporting Affidavit of a Social Security Administration (SSA) Special Agent in a recent U.S. DOJ enforcement action involving fraudulent robocalls, in *U.S. v. Palumbo, et al.*, (Case #1:20-cv-00473-ERK-RLM, EDNY), which is available starting at page 40 (of 62) here: https://www.justice.gov/opa/press-release/file/1240026/download.

28. Page 44 of the SSA Special Agent Affidavit discusses USTelecom, a nonprofit trade association that developed an Industry Traceback Group across the telephonic communications industry to trace robocalls to their sources. During a traceback, USTelecom sends email messages, starting with the common carrier whose customer received the robocall, and gets information from each carrier in the chain about who sent the call. Worsham seeks to effect that or the equivalent initial trace effort using the information sought from Armstrong.

29. Worsham understands that all phone service providers receive a very small fee for having transmitted their portion of each call that ultimately ends at Worsham's numbers, so they also need to know the identity of the previous transmitting carrier for accounting purposes, and for law enforcement.

30. Defendant, and even the telemarketers used by Defendant to call Plaintiff, do not know the carriers related to the Caller ID information sought in the Subpoenas, but Armstrong as Worsham's phone service provider would know the carriers).

31. Proving (or disproving) that the alleged calls were made by Defendant or one of its telemarketers or lead generators is a very important and relevant part of this case.

32. The carrier information sought in the Subpoena is necessary to try to obtain the subscriber information for the actual originating caller for each call alleged.

33. Worsham suggests that a monetary penalty or fine paid to the Court against Armstrong if it continues to refuse to comply and reasonably promptly is appropriate, and should get the desired response. Worsham suggests a penalty of $500, and also requests that any Order require Armstrong to speak with Worsham as part of resolving this issue. The discovery rules including Rule 37 are written for contempt orders to be issued

against parties, but a non-party may be held in contempt of court for violating an order requiring the non-party to product documents and attend a deposition. *General Ins. Co. Of America v. Eastern Consol. Utilities, Inc.* 126 F.3d 215, 220 (3d Cr. 1997), *Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003) (fines are permissible sanctions).

On August 3, 2020 counsel for Defendant Direct Energy Services, LLC advised Plaintiff that Defendant will not oppose this Motion for Contempt against Armstrong, provided that the Motion includes the following statement: "While Direct Energy disputes Worsham's allegations involving Direct Energy, it is unopposed to the relief requested to the extent that Worsham has attempted to serve Armstrong and Armstrong has not complied. Direct Energy lacks material facts regarding such."

WHEREFORE the Court should grant this Motion for Contempt against Armstrong Telecommunications, Inc. A proposed Order is provided.

Respectfully submitted,

/s/ *Michael C. Worsham*
Michael C. Worsham, Plaintiff, *Pro Se*
1916 Cosner Road
Forest Hill, Maryland 21050
410-557-6192
michael @ magicmichael.net

### CERTIFICATE OF SERVICE

On August 3, 2020 this document was filed electronically for service on:
Ifeanyi Olusegun Ezeigbo, Esq., Bonner, Kiernan, Trebach, & Crociata, LLP, 1 Park Place, Suite 425, Annapolis, MD 21401, iezeigbo@bonnerkiernan.com, *Counsel for Defendant;* and will be served via U.S. mail on Armstrong Telecommunications, Inc., One Armstrong Place, Butler, PA 16001, 866-887-8495, Fax: 866-490-7294, and via email to Subpoena@agoc.com.

/s/ *Michael C. Worsham*
Michael C. Worsham