IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MICHAEL C. WORSHAM,** | * |
| **Plaintiff** | * |
| v. | *   Civil Case No. SAG-20-00193 |
| **DIRECT ENERGY SERVICES, LLC,** | * |
| **Defendant.** | * |

*************

## MEMORANDUM OPINION

Plaintiff Michael C. Worsham ("Worsham"), a disbarred attorney who appears *pro se,* filed this case against Defendant Direct Energy Services, LLC ("Direct Energy"), alleging violations of federal and state telephone consumer protection statutes. Currently pending before the Court are the parties' dispositive motions: Direct Energy's Motion for Summary Judgment, ECF 67, and Worsham's Motion for Partial Summary Judgment, ECF 95. I have reviewed both motions, along with the relevant supplemental filings, oppositions, and replies. ECF 81, 82, 83, 96, 99, 103. I have also reviewed Worsham's Motion for Sanctions, ECF 102, which has not yet been opposed. For the reasons set forth below, Direct Energy's Motion for Summary Judgment will be granted, and Worsham's Motion for Summary Judgment and Motion for Sanctions will be denied.

**I.   BACKGROUND**

Direct Energy provides energy products and services to customers in states including Maryland. Worsham, a Maryland resident, placed his cell phone number, 410-557-6192, and his landline number, 410-692-2749, on the National Do Not Call (DNC) Registry.[1] However, he received the following calls:

---

[1] Direct Energy contends that Worsham's landline is actually a business number, not a residential number, relying on an entry reflected on a Court docket in another lawsuit filed by Worsham. ECF

| Call Number | Date | Time | Number Called | Number on Caller ID |
|---|---|---|---|---|
| 1 | October 22, 2018 | 2:52 PM | 410-557-6192 | 240-318-1447 |
| 2 | November 2, 2018 | 6:49 PM | 410-557-6192 | 410-557-3638 |
| 3 | November 5, 2018 | 9:49 AM | 410-557-6192 | 513-644-3578 |
| 4 | November 5, 2018 | 12:18 PM | 410-557-6192 | 513-644-3578 |
| 5 | November 5, 2018 | 4:43 PM | 410-557-6192 | 513-644-3578 |
| 6 | November 8, 2018 | 5:34 PM | 410-557-6192 | 410-557-3150 |
| 7 | November 9, 2018 | 11:22 AM | 410-557-6192 | 872-772-2549 |
| 8 | November 9, 2018 | 2:06 PM | 410-557-6192 | 410-557-1372 |
| 9 | November 12, 2018 | 10:51 AM | 410-557-6192 | 872-772-2549 |
| 10 | November 12, 2018 | 10:51 AM | 410-557-6192 | 872-772-2549 |
| 11 | November 13, 2018 | 6:12 PM | 410-557-6192 | 410-557-2855 |
| 12 | November 15, 2018 | 2:12 PM | 410-557-6192 | 410-844-6442 |
| 13 | November 19, 2018 | 9:38 AM | 410-557-6192 | 667-367-0142 |
| 14 | November 19, 2018 | 12:15 PM | 410-557-6192 | 667-367-0142 |
| 15 | November 19, 2018 | 2:11 PM | 410-557-6192 | 667-267-0142 |
| 16 | November 19, 2018 | 3:52 PM | 410-557-6192 | 667-367-0142 |

67-1 at 20-22. Worsham vehemently contests that assertion, and in fact has filed a motion seeking sanctions against Direct Energy for making it. ECF 102. Worsham's motion for sanctions will be denied, as Direct Energy appears to have accurately represented the court record and is making a potentially valid point that could extinguish its TCPA liability. *See, e.g.*, *Worsham v. Discount Power, Inc.*, Civ. No. RDB-20-0008, 2021 WL 50922, at *1 (D. Md. Jan. 6, 2021), *Report and Recommendation adopted*, ECF No. 44, (Oct. 21, 2020) ("[D]efense counsel's zealous representation of its client could reasonably include the argument that the number at issue was the business number for a law firm, run either by a disbarred attorney or an attorney that took over Mr. Worsham's practice."). However, for the reasons described below, this Court need not reach the issue of whether Worsham's landline phone is residential or business in nature.

| 17 | December 6, 2018 | 4:06 PM | 410-557-6192 | 410-557-2570 |
| 18 | December 10, 2018 | 11:48 AM | 410-557-6192 | 410-557-2722 |
| 19 | December 10, 2018 | 6:24 PM | 410-557-6192 | 410-208-1571 |
| 20 | January 7, 2019 | 12:39 PM | 410-557-6192 | 410-557-4807 |
| 21 | October 6, 2018 | 11:54 AM | 410-692-2749 | 410-898-7544 |
| 22 | October 22, 2018 | 10:09 AM | 410-692-2749 | 301-298-8058 |
| 23 | October 22, 2018 | 10:24 AM | 410-692-2749 | 301-298-8058 |
| 24 | November 19, 2018 | 1:00 PM | 410-692-2749 | 410-692-2177 |
| 25 | December 6, 2018 | 6:43 PM | 410-692-2749 | 410-692-4689 |
| 26 | December 10, 2018 | 3:44 PM | 410-692-2749 | 410-692-1916 |
| 27 | January 15, 2019 | 7:20 PM | 410-692-2749 | 410-692-9984 |

During five of those calls (Calls, 4, 7, 12, 14, and 15), Worsham spoke with live representatives that said they were calling on behalf of Direct Energy. ECF 81-2 ¶ 5 (# 4, 7, 12, 14, 15) ("the five calls"). During one of those five calls, the representative provided Worsham with the customer service number for Direct Energy. *Id.* #7.

Direct Energy did not place telemarketing calls to Worsham itself. ECF 67-2 at 5. It contracts with a series of telemarketing agencies, using independent contractor agreements that require the agencies to comply with the TCPA and other applicable consumer protection laws. ECF 67-2 at 11; ECF 81-6. Upon receipt of Worsham's lawsuit, Direct Energy tried to identify the third-party vendor responsible for calls to Worsham. ECF 67-2 at 11. None of its vendors claimed responsibility for the calls. *Id.* Direct Energy provided contact information for its vendors to Worsham, to permit him to subpoena the necessary records, but his efforts did not reveal the callers' identities.

**II.     STANDARD OF REVIEW**

The parties each seek summary judgment as to all or some of the claims Worsham asserts. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support an element of the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 34 9 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010)

4

(unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III.    ANALYSIS

Initially, Worsham takes the position, in his various filings, that discovery in this case should have been permitted to continue before this Court adjudicates the summary judgment motions. *See, e.g.*, ECF 81-1 at 1 (arguing that Direct Energy's motion for summary judgment is premature and that discovery should be "allowed to resume so that Worsham can continue tracing the calls to his residential land line number 410-692-2749, and to depose the Defendant."). This Court disagrees. Worsham has been provided ample time to conduct discovery. Although the Court granted one of Worsham's motions for extension of time to conduct discovery, ECF 44, Worsham was not particularly diligent or aggressive with the discovery he sought. He has taken no depositions. Moreover, the record reflects that at times he delayed for weeks or months before seeking subpoenas, even after the prospective recipients had been identified. *See, e.g.*, ECF 54 (reflecting that Direct Energy identified certain entities on June 11, 2020, but Worsham waited until August 19, 2020 to seek to subpoena them). In the interest of judicial economy and case management, this Court cannot permit discovery to continue indefinitely, and the parties are expected to conduct their discovery within the deadlines set in the scheduling order. *See Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) ("[A] judge's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.") (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). Thus, it is appropriate to adjudicate the parties' summary judgment motions on the existing record.

The majority of Worsham's claims are filed pursuant to the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TCPA"), and its Maryland analog, the Maryland Telephone Consumer Protection Act, Maryland Code (2005 Repl. Vol) § 14-3201 of the Commercial Law Article ("MDTCPA"). The TCPA was enacted to protect consumers from "intrusive, nuisance calls . . . from telemarketers." 47 U.S.C. § 227 note, Pub. L. No. 102243, § 2(6)-(7). It contains various provisions (1) prohibiting the use of automated calling systems, § 227(b)(1)(A), or calling cellphones or residential landlines using "an artificial or prerecorded voice," and (2) calling a cell phone number or residential telephone number listed on the national DNC registry, § 227(c). The TCPA provides an express private right of action for consumers who experience those two types of violations. While the TCPA is a remedial statute, its remedial purpose does not justify reading a provision "more broadly than its language and the statutory scheme reasonably permit." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979) (quoting *SEC v. Sloan*, 436 U.S. 103 (1978)).

There is a basic factual deficiency preventing Worsham's recovery as to most of the calls he cites: he has adduced no evidence linking those calls to Direct Energy. Setting aside, for the moment, the five calls in which the caller specifically mentioned Direct Energy and the six additional calls coming from the same spoofed numbers as those five calls, ECF 95 at 10, Worsham offers nothing but unbridled speculation to suggest that the other sixteen calls were associated with Direct Energy in any way. This is particularly problematic here since it is evident, from Worsham's own litigation history, that Direct Energy is not the only energy company engaged in telemarketing efforts directed at him. *See e.g.*, *Worsham v. Discount Power*, 2021 WL 50922, Civ. NO. RDB-20-0008, at *1 (D. Md. Jan. 6, 2021) (alleging that very similar calls were attributable to Discount Power, though many of the calls did not specifically name the responsible

6

energy company). The Court has no way of discerning whether these sixteen calls had anything to do with Direct Energy as opposed to another company like Discount Power that is similarly alleged, elsewhere, to have contacted Worsham. In the absence of competent evidence supporting Worsham's claims, summary judgment for Direct Energy is appropriate as to all claims pertaining to calls 1, 2, 6, 8, 11, and 17-27, which disposes of Counts 5, 6, 11, 12, 13, 14, 15, 19, and 21.

In addition, Worsham lacks a private right of action to pursue some of his counts. Counts 2 and 8 assert a violation of 47 C.F.R. § 64.1200(d) and (d)(4). ECF 13-1 ¶¶ 42-43. United States District Judge James K. Bredar explained in *Worsham v. Travel Options, Inc.*, Civil No. JKB-14-2749, 2016 WL 4592373, at *7 (D. Md. 2016) that § 64.1200(d)(4) sets procedural standards and therefore falls within the scope of subsection *d* of the TCPA, which does not include a private right of action. *See id.* Likewise, Judge Bredar rejected the claims Worsham tries to assert in Counts 3 and 9 of the Amended Complaint, which allege a violation of 47 C.F.R. § 64.1601(e)(1) by failing to transmit complete Caller ID information and the name of the telemarketer. Again, Judge Bredar ruled, "An asserted violation of 47 C.F.R. § 64.1601(e)(1) is not properly brought under either the TCPA's subsection *b* or subsection *c*. Any violation of § 64.1601(e)(1) is a violation of technical and procedural standards under subsection *d,* and as earlier noted, no private right of action exists" under that subsection. *Travel Options, Inc.*, 2016 WL 4592373, at *7. Because this Court concurs with Judge Bredar's reasoning in its entirety, summary judgment will be granted for Direct Energy as to Counts 2, 3, 8, and 9.

Similarly, Counts 16-21 of the Amended Complaint allege violations of the MDTCPA, premised on Direct Energy's alleged violations of six different provisions of the Federal Trade Commission's ("FTC's") Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.1 *et seq.* To recover damages under the TSR, Worsham would have to "bring a civil action in the appropriate district

court of the United States" in which he alleged actual damages exceeding $50,000.  15 U.S.C. § 6104(a).  Worsham did neither, as he filed this action in state court and alleged only statutory damages, not actual damages.  The MDTCPA was enacted "merely to enable a private right of action under the TCPA, not to create new causes of action."  *Worsham v. Ehrlich*, 957 A2d 161, 172 (Md. Ct. Spec. App. 2008).  Although *Ehrlich* did not expressly consider whether the MTCPA would provide a vehicle for a violation of the TSR, other courts have held that *Ehrlich*'s conclusion prohibits using the MDTCPA to create a new cause of action that does not exist under federal law.  *See Worsham v. Accounts Receivable Mgmt.*, 497 Fed. App'x 274, 278 (4th Cir. 2012) ("Although the question of whether the MTCPA creates this cause of action has not been answered by Maryland's highest court, we nevertheless see no reason to reject the determination of the state's intermediate appellate court that this cause of action does not exist under state law, particularly in light of the fact that Worsham was the plaintiff in that case.") (citing *United States v. King*, 673 F.3d 274, 279 (4th Cir. 2012)).  Even if the MDTCPA created a cause of action to bring suit under the TSR, because Worsham has submitted no evidence of actual damages to support a TSR claim, summary judgment will be granted as to Counts 16-21.

With those issues resolved, this Court turns to Counts 1, 4, 7, and 10 as they apply to the eleven remaining calls that either included reference to Direct Energy or came from the same spoofed number as a call that did.  Count 1 asserts a violation of the TCPA by failing to honor the DNC registry, and Count 7 asserts the same claim pursuant to the MDTCPA analog.  Count 4 asserts a violation of the TCPA by making calls with an ADTS or a prerecorded device, and Count 10 again is the MDTCPA analog.

Looking first at Counts 4 and 10, Worsham offers no evidence that any of the eleven calls were made using an ATDS or prerecorded device.  In order to prevail, Worsham must satisfy his

burden to prove use of an ATDS, which is defined by the statute as equipment that "has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator, and (B) to dial such numbers." *See id.* § 227(a)(1). Worsham's repeated attempt to shift the burden to Direct Energy is unavailing. *See* ECF 81-1 at 19 ("[Direct Energy] has presented no evidence or material regarding the dialing systems used by its telemarketing vendors and, notably, not a single affidavit."). Worsham is the plaintiff and bears the burden of proof on the issue. He has failed to carry that burden, because the eleven calls he identifies do not involve any prerecorded devices or messages: either (1) a live person spoke to Worsham, (2) Worsham did not answer the call, or (3) no one was on the line when Worsham answered. ECF 95 at 19-21 (describing the contents of the relevant eleven calls). Furthermore, without knowing who made the eleven calls, he has no way of establishing how those calls were dialed. Other than his conjecture, Worsham has adduced no evidence of the use of any ATDS equipment with respect to the eleven remaining calls, making summary judgment appropriate as to Counts 4 and 10.

Finally, this Court will assess Counts 1 and 7 with respect to the eleven calls presenting some arguable connection to Direct Energy.[2] As noted above, the live callers in five of the calls stated that they were calling on behalf of Direct Energy and, in one instance, provided Direct Energy's customer service number. *See* ECF 81-2 ¶ 5 (#4, 7, 12, 14, 15). Despite those statements by the unknown callers, the uncontroverted evidence before the Court is that Direct Energy does

---

[2] In conducting this analysis, the Court makes no specific finding that Worsham's proffered link between the five calls naming Direct Energy and the six calls coming from the same spoofed numbers would suffice to defeat summary judgment as to the six calls that did not mention Direct Energy. This Court has been presented with no evidence about the use of spoofed numbers to permit it to assess whether more than one entity or individual can use the same spoofed number on a given date. However, the Court need not reach the issue of the sufficiency of Worsham's evidence, as a result of its determination that Worsham's failure to identify the callers makes it impossible to prove vicarious liability or agency, even as to the five calls actually mentioning Direct Energy.

not make its own telemarketing calls, but instead maintains relationships with various third-party independent contractors.  ECF 67-2.  Direct Evidence's lack of direct liability for the calls does not end the inquiry, though, as both parties acknowledge that there can be vicarious liability under the TCPA.  *See In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd.  The dispute is whether Worsham has adduced enough evidence to create a genuine issue of material fact as to Direct Energy's liability in this case.

Worsham advances several theories of liability.  First, he contends that the non-delegation doctrine should apply.  Second, he suggests vicarious liability under a theory of ratification.  Third, he suggests an agency theory.  None of those theories succeeds.

First, Worsham maintains that the TCPA essentially imposes strict vicarious liability on Direct Energy, because its duty to comply with the statute is non-delegable.  ECF 81-1 at 15-16.  Worsham has not cited any cases establishing a non-delegable duty to comply with the TCPA, and this Court is unaware of any such precedent.  In fact, because a plethora of courts and the Federal Communications Commission have analyzed, in various cases, the existence of vicarious liability under traditional agency theories, *see, e.g.*, *Hossfeld v. Gov't Emps. Ins. Co.*, 88 F. Supp. 3d 504, 510 (D. Md. 2015); *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd, it seems clear that the non-delegation doctrine is inapplicable to the TCPA, since it would impose strict liability thus making such vicarious liability analyses unnecessary.

Worsham next attempts to rely on Direct Energy's "ratification" of the actions of the unknown caller.  In support, he cites language from the FCC's decision in *In the Matter of The Joint Petition Filed by DISH Network, LLC, et al.*, Declaratory Ruling, FCC 13-54, 28 FCC Rcd 6574 (May 9, 2013) at ¶ 46, where the FCC stated that "a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to

market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct." *Id.* Worsham has adduced no evidence that Direct Energy knew or reasonably should have that any telemarketer was violating the TCPA on its behalf. There is no suggestion that Worsham advised Direct Energy of these calls prior to filing his lawsuit, to permit Direct Energy an opportunity to try to prevent them. Additionally, Worsham's inability to identify the caller makes proof of ratification impossible. Based on the very limited evidentiary record before this Court, these calls may not even have derived from a "third-party telemarketer that is otherwise authorized to market" on Direct Energy's behalf. Worsham's complaint that Direct Energy did not provide him with the evidence he needs through discovery is unavailing. Direct Energy complied with its discovery obligations, and the fact that it did not uncover evidence supportive of Worsham's claims does not somehow create vicarious liability on its part.

Finally, Worsham has not proffered evidence that would allow a reasonable trier of fact to conclude that the unknown caller or callers were acting as Direct Energy's agents. While the agreements between Direct Energy and its telemarketers expressly create an independent contractor relationship, "whether an entity acted as agent or as an independent contractor" under the TCPA is a question of fact. *Worsham v. Nationwide Ins.*, 138 Md.App. 487, 503, 772 A.2d 868 (Md. Ct. Spec. App. 2001). Familiar agency principles govern the analysis:

> An agency relationship may be created by written agreement or by conduct. The classic three factors considered in determining whether an agency relationship exists are whether:
>
> (1) the agent is subject to the principal's right of control;
> (2) the agent has a duty to act primarily for the benefit of the principal; and
> (3) the agent has the power to alter the legal relations of the principal.

11

> These are not exclusive factors; rather than being determinative, the three factors should be viewed within the context of the entire circumstances of the transaction or relations.

*Brooks v. Euclid System Corp.*, 151 Md.App. 487, 506-07, 827 A.2d 887, cert. denied, 377 Md. 276, 833 A.2d 31 (2003) (citations and quotations omitted).

Worsham cites to the marketing agreements Direct Energy enters with each of its telemarketing contractors, suggesting that the degree of control those agreements afford to Direct Energy evidences an agency relationship. ECF 81-1 at 17-19. However, "'the reservation of some control over the manner in which the work is done does not destroy the independent contractor relationship where the contractor is not deprived of his [or her] judgment in the execution of his [or her] duties.'" *Brooks*, 151 Md. App. at 510, 827 A.2d 887 (quoting *Schweizer v. Keating*, 150 F.Supp. 2d 830, 840 (D. Md. 2001)). Where, as here, the parties' agreement gives the telemarketing entity the ability to "control [its] employees" as well as "the right to control [its] conduct," the degree of control needed for an agency relationship is lacking. *Id.* at 508-09, 827 A.2d 887.

Moreover, here, Worsham cannot even establish that the caller or callers had an agreement with Direct Energy, because the identity of the callers remains unknown. Even assuming arguendo, however, that a caller did have such an agreement, Direct Energy's standard agreement provided that the caller was an independent contractor, not an agent. The agreement allows the vendor to select, supervise, discipline, and train its employees, and allows the vendor to retain authority over the means, manner and methods of performing its responsibilities, while reserving for Direct Energy some role in the preparation of telemarketing scripts and the right to receive detailed reports of the vendor's activities. *See, e.g.*, ECF 81-6. Given the broad control the vendors retain over their own conduct, they appear properly classified as independent contractors. Direct

12

Energy thus cannot be held vicariously liable for the calls under a principal-agent relationship, even assuming one or more of the calls was made by one of its telemarketing vendors.

Finally, the fact that callers said they were "calling on behalf of Direct Energy" and, in one instance, provided "Direct Energy's customer service number," does not establish an agency relationship. "[T]he fact that entities were permitted to hold themselves out as authorized dealers or some similar description is insufficient to hold the moving defendants in this case liable . . . the mere fact that a dealer uses a supplier's name does not render it an agent of the supplier, just as every bar which advertises that they sell a particular brand of beer is not the agent of the brewery which they advertise." *In re: Monitronics International, Inc.*, 223 F. Supp. 3d 514, 527-28 (N.D. W.Va. 2016). Direct Energy's customer service number, that one caller provided to Worsham, is not a secret number that would be available only to a contracted vendor of the company. The possession of that number, then, adds nothing to the analysis of whether the caller had a contractual relationship with Direct Energy. Here, then, while the unidentified callers held themselves out as Direct Energy's representatives, Worsham proffers no evidence to indicate that they were authorized by Direct Energy to act as its agents. In the absence of that evidence, summary judgment is warranted.

## IV. CONCLUSION

For the foregoing reasons, Direct Energy's Motion for Summary Judgment, ECF 67, is GRANTED, and judgment will be entered in favor of Direct Energy on all counts. Worsham's Motion for Partial Summary Judgment, ECF 95, and Motion for Sanctions, ECF 102, will be denied.

A separate order follows.

Dated:  March 12, 2021     /s/
               Stephanie A. Gallagher
               United States District Judge